IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JA'RICO HUEY, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| CORECIVIC OF TENNESSEE, LLC, | ) JURY DEMANDED |
| VINCE VANTELL, and AJEE SMITH, | ) |
| | ) |
|     *Defendants*. | ) |

**COMPLAINT**

Comes now the Plaintiff Ja' Rico Huey, and for a Complaint against the Defendants, CoreCivic of Tennessee, L.L.C., Vince Vantell, and Ajee Smith and would allege and show unto this Honorable Court as follows:

**I. INTRODUCTION**

1. Plaintiff Ja'Rico Huey is a citizen and resident of the State of Tennessee. At the present time, Mr. Huey is an inmate in the custody of the Tennessee Department of Corrections. At all times relevant to the allegations of this Complaint, Mr. Huey has been incarcerated, and in the custody of, the State of Tennessee at the Trousdale Turner Correctional Center in the City of Hartsville, Macon County, Tennessee.

2. Defendant CoreCivic of Tennessee, L.L.C. is a Tennessee limited liability company with its principal place of business in the State of Tennessee is 5501 Virginia Way, Suite 110, Brentwood, Tennessee 37027-7680. Defendant CoreCivic can be served through its registered agent for service of process, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919.

3. Defendant Vince Vantell is a citizen and resident of the State of Tennessee who was employed as the Warden of Trousdale Turner Correctional Center at all times relevant to this Complaint. On March 21, 2025, Defendant Vantell resigned from Defendant CoreCivic after being placed on administrative leave during a Federal Department of Justice investigation into the operation of Defendant's CoreCivic policies, procedures, and operations involving the Trousdale Turner Correctional Center.

4. Defendant Ajee Smith is a citizen and resident of the State of Tennessee who at all times relevant to this Complaint was employed as correctional officer at Trousdale Turner Correctional Center as a Captain.

5. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

6. As the judicial district in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). Venue is independently proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

7. This lawsuit arises out of a vicious assault by stabbing which resulted in critical injuries to Mr. Huey. This lawsuit is brought to seek monetary damages arising from the vicious attack suffered by Mr. Huey and to redress the policies and procedures and/or lack of policies and procedures at Trousdale Turner Correctional Center which violate the guaranteed Constitutional rights of inmates resulting in repeated inmate on inmate violence.

8. Defendant CoreCivic is the operator of the prison facility known as Trousdale Turner Correctional Center located at 140 Macon Way in Hartsville, Tennessee.

9. In operating Trousdale Turner Correctional Center, Defendant CoreCivic is required to comply with minimum contract requirements established by the Tennessee Department of Correction, which monitors Defendant CoreCivic's compliance. Trousdale Turner Correctional Center has never, in its entire history, been fully compliant with minimum contractual staffing requirements.

10. Because Trousdale Turner Correctional Center is a private, for-profit prison operated by Defendant CoreCivic, the correctional facility has been chronically understaffed, unsupervised, and non-compliant with its contractual obligations in operating the prison facility, allowing dangerous gang-affiliated inmates to roam freely without consequence. When minimum contractual staffing requirements are not met, Defendant's CoreCivic facilities—including Trousdale Turner Correctional Center—experience heightened rates of violent incidents, including homicides, rapes, stabbings, and other assaults, only a small fraction of which are ever officially documented.

## II. FACTS

11. Defendant Smith is the Defendant's CoreCivic correctional officer in charge of the segregtion pod. Defendant CoreCivic empowered Defendant Smith with the responsibility of determining where to house inmates within the segregation pod.

12. On August 4, 2025, Mr. Huey was an inmate confined to his cell (AD 204) in the segregation pod at Trousdale Turner Correctional Center. Mr. Huey is of African-American descent.

13. For reasons presently unclear, Defendant Smith decided to affect a cell transfer for an inmate in a perfectly appropriate cell in the segregation pod to Mr. Huey's cell.

14. At the time that Defendant Smith initiated the cell transfer of this inmate to Mr. Huey's cell, there were a number of empty cells in the segregation pod.

15. Although there existed no legitimate reason to initiate a cell transfer for this inmate from his cell in the segregation pod to Mr. Huey's cell, Defendant Smith approached Mr. Huey's cell and advised him that she was going to insert another inmate in his cell.

16. The inmate that Defendant Smith intended to introduce into Mr. Huey's cell was Caucasian and was unknown to Mr. Huey. Upon information and belief, this inmate was Tyler Smith and was a member of a white gang.

17. Defendants have long known that Trousdale Turner Correctional Center contains multiple gang factions that have great animosity towards each other. There have been many assaults, stabbings, and murders based on racial animosity between these inmates.

18. Many hours prior to the injuries to Mr. Huey that are the subject of this litigation, another vicious stabbing occurred at Trousdale Turner Correctional Center.

19. On information and belief, Defendant Smith was involved in a remarkably similar and likely not coincidental cell transfer with another inmate, resulting in another inmate being stabbed multiple times, resulting in the prisoner being life-flighted to a medical facility in critical condition.

20. When Defendant Smith brought the Tyler Smith to Mr. Huey's cell, he was bound by shackles and restraints.

21. Defendant Smith then entered Mr. Huey's cell and shackled Mr. Huey's hands behind his back with restraints. This left Mr. Huey in a completely defenseless position.

22. When Defendant advised inmate Tyler Smith that he needed to go into the cell with Mr. Huey, Tyler Smith told Defendant Smith that he could not be placed into the cell with Mr. Huey because he was a black guy.

23. After Tyler Smith continued to resist Defendant Smith's verbal commands to enter the cell with Mr. Huey, Defendant Smith made Tyler Smith get on his knees and then made threats in an effort to coerce him to enter the cell with Mr. Huey.

24. Tyler Smith then responded, "if you put me in there, somebody's going to get hurt."

25. The statements by Tyler Smith reasonably foretell his intention to assault Mr. Huey if placed into the cell with him.

26. Despite the threats by Tyler Smith to assault Mr. Huey, Defendant Smith failed to take reasonable precautions to prevent harm and injury to Mr. Huey. Instead, Defendant Smith continued with her coercive efforts to cause Tyler Smith to go into Mr. Huey's cell.

27. Defendant Smith then threatened to spray Tyler Smith with pepper spray and drag him into the cell if he did not go into the cell voluntarily.

28. Ultimately, Tyler Smith relented to Defendant Smith's wishes went into the cell with Mr. Huey.

29. Within seconds of entering Mr. Huey's cell, Tyler Smith pulled knife and began stabbing the defenseless Mr. Huey.

30. At some point, Defendant Smith pulled the cell door closed without providing Mr. Huey any assistance.

31. By pulling the cell door closed, Defendant Smith ensured two things: 1) the defenseless Mr. Huey had no assistance to prevent further attack; and, 2) Tyler Smith could not harm her.

32. With his hands in shackles, Mr. Huey was unable to resist the vicious stabbings. Tyler Smith continued to stab Mr. Huey at least seven times in his abdomen and chest, resulting in two punctured lungs and serious internal abdominal injuries. Mr. Huey soon lost consciousness.

33. Mr. Huey was eventually life-flighted to Vanderbilt University Medical Center where underwent surgery and spent ten days in recovery.

34. After returning from the hospital, Mr. Huey (and his attorney) filed a timely inmate grievance detailing his attack. Although Mr. Huey's claims for monetary relief are non-grievable under TDOC policy, Mr. Huey has fully exhausted his available administrative remedies to the extent possible. In response to his grievances, all of which were adjudicated and denied, Mr. Huey received no relief and no help.

### III. CAUSES OF ACTION

<u>42 U.S.C. § 1983—DELIBERATE INDIFFERENCE BY FAILURE TO PREVENT FORESEEABLE INMATE-ON-INMATE VIOLENCE AS TO DEFENDANTS VANTELL AND SMITH</u>

35. The Plaintiff incorporates and realleges each and every allegation of this Complaint as if fully set forth herein verbatim.

36. Because Defendant CoreCivic performs an essential and traditional state function, operating a state prison, the Defendants in this action acted under the color of state law.

37. Defendant CoreCivic is not entitled to immunity afforded to states pursuant to the Eleventh Amendment to the United States Constitution and may be held liable under 42 U.S.C. § 1983 for constitutional violations.

38. At all times relevant to this Complaint, Defendants Vantell and Smith had legal duties under the Eighth and Fourteenth Amendments to the United States Constitution to protect Mr. Huey from violence by other prisoners and to ensure Mr. Huey's reasonable safety while an inmate at Trousdale Turner Correctional Center.

39. Since the commencement of operations, including on the date of the vicious assault against Mr. Huey, Defendant CoreCivic has operated Trousdale Turner Correctional Center at a severely understaffed level and remained non-compliant with minimum contract requirements allowed in connection with the operation of Trousdale Turner Correctional Center. The individual Defendants have long known that Trousdale Turner Correctional Center operated at an improper and understaffed level.

40. Defendants Vantell and Smith are and may be held liable for acting with deliberate indifference to Mr. Huey's safety at Trousdale Turner Correctional Center.

41. Defendants Vantell and Smith failed to protect Mr. Huey from a known and communicated risk of violence at the hands of Tyler Smith despite being notified prior to the assault of the specific threat made against Mr. Huey.

42. Defendants Vantell and Smith failed to ensure Mr. Huey's reasonable safety at Trousdale Turner Correctional Center by taking appropriate action after knowledge of a threat of certain assault.

43. Defendants Vantell and Smith acted with deliberate indifference to Mr. Huey's safety while he has been housed as an inmate at Trousdale Turner Correctional Center.

44. Defendant Smith was actually aware of specific and particularized risks of serious harm posed to Mr. Huey as a result of the threats made.

45. Defendants Vantell and Smith both knew that Mr. Huey faced a substantial risk of serious harm at Trousdale Turner Correctional Center as a result of its understaffing on the date of his assault.

46. Defendants were actually aware of the specific and particularized risks of serious harm posed to inmates like Mr. Huey as a consequence of, *inter alia*, CoreCivic's chronic understaffing of Trousdale Turner Correctional Center; CoreCivic's failure to properly train and supervise the staff at Trousdale Turner Correctional Center to ensure adequate staffing levels; Trousdale Turner Correctional Center's failure to adhere to adopt specific policies, procedures, and guidelines concerning inmate safety; Trousdale Turner Correctional Center's failure to adhere to inmate safety protocols; and

Trousdale Turner Correctional Center's failure to classify and house inmates in its care correctly and in accordance with generally accepted practices in prison management.

47. At the time Mr. Huey was violently assaulted, Trousdale Turner Correctional Center was plagued by constant and pervasive risks of physical harm to inmates, including inmate assaults and stabbings on virtually a weekly basis.

48. At the time Mr. Huey was violently assaulted, Trousdale Turner Correctional Center's pervasive risk of harm to inmates manifested in actual harm and a dramatically outsized number of serious inmate-on-inmate attacks, only a fraction of which were ever officially documented.

49. To the extent that CoreCivic attempts to segregate violent inmates from non-violent inmates at Trousdale Turner Correctional Center, such attempts are rendered ineffectual by the facts that inmates are misclassified; are often allowed to perpetuate violence when it benefits the guards; are not meaningfully secured in their cells due to defective doors that enable inmates to "pop out" at their leisure; and that entire pods are often left unsecured—even during lockdowns—due to understaffing. In combination with these chronic failures, Defendant Smith's decision to insert Tyler Smith into Mr. Huey's cell while leaving Mr. Huey shackled and helpless to defend himself proximately enabled Tyler Smith to assault Mr. Huey.

50. Despite Defendant Vantell's actual awareness of the severe risks to inmate safety within Trousdale Turner Correctional Center, Defendant Vantell consciously and deliberately failed to address those risks because he did not care about maintaining inmate safety at Trousdale Turner Correctional Center and because deliberate indifference to inmate safety is more profitable.

51. Notwithstanding the many previous understaffing-enabled homicides and violent attacks at Trousdale Turner Correctional Center, violent inmate-on-inmate attacks have never been met with meaningful efforts to comply with minimum contractual staffing requirements.

## LIABILITY UNDER *MONELL V. DEPT. OF SOCIAL SERVICES*, 436 U.S. 658 (1978) AS TO DEFENDANT CORECIVIC

52. The Plaintiff incorporates and realleges each and every allegation of this Complaint as if fully set forth herein.

53. Defendant CoreCivic has an unconstitutional policy or practice of maintaining staffing levels at Trousdale Turner Correctional Center that are insufficient to ensure that inmates like Mr. Huey are protected from inmate-on-inmate violence.

54. Defendant CoreCivic has adopted a policy and practice of severely understaffing its facilities, including Trousdale Turner Correctional Center, without regard to inmate safety because understaffing is more profitable.

55. Defendant CoreCivic's understaffing routinely results in hundreds or thousands of critical posts at Trousdale Turner Correctional Center being unfilled or understaffed every month.

56. During multiple consecutive quarters leading up to Mr. Huey's assault, CoreCivic received notices from the TDOC detailing its consistent and severe noncompliance with minimum contractual staffing requirements.

57. Due to multiple audits and regular liquidated damages assessments identifying Trousdale Turner Correctional Center's severe understaffing issues, and due to thousands of violent incidents—both reported and unreported—at the facility over a period of years, Defendant CoreCivic had actual knowledge of Trousdale Turner Correctional Center's chronic understaffing problems at the time of the Plaintiff's assault, but it chose not to staff Trousdale Turner Correctional Center adequately.

58. At the time of Mr. Huey's assault, Defendant CoreCivic's employees—including Defendant Vantell, its on-site policymaker—had actual knowledge that Trousdale Turner Correctional Center's chronic understaffing problems resulted in an extraordinary and outsized level of inmate-on-inmate violence at the facility.

59. Defendant CoreCivic's policy and practice of understaffing is widespread, rampant, and endemic to Defendant CoreCivic's Tennessee prison facilities, including and especially Trousdale Turner Correctional Center.

60. Defendants CoreCivic and Defendant Vantell, its on-site policymaker, knew of the heightened and chronic safety risks to inmates resulting from understaffing at Trousdale Turner Correctional Center, but they tolerated, maintained, and promoted understaffing to generate greater profits for Defendant CoreCivic at the expense of the safety of inmates like Mr. Huey.

61. Mr. Huey's assault is attributable to Defendant CoreCivic's policy and practice of failing to ensure adequate staffing at its prison facilities, including Trousdale Turner Correctional Center, which was explicitly or impliedly authorized by Defendant Vantell and in which he knowingly acquiesced in accordance with Defendant CoreCivic's policy, custom, and practice of understaffing Defendant CoreCivic's Tennessee facilities.

62. Mr. Huey's assault is also attributable to Defendant CoreCivic's policy and practice of failing to train, instruct, and supervise correctional officers on appropriate policies and procedures in inmate safety in light of clearly articulated threats by other inmates at its prison facilities, including Trousdale Turner Correctional Center.

63. Trousdale Turner Correctional Center's chronic understaffing also continues to remain unremedied even after Mr. Burchard's assault.

## NEGLIGENCE AS TO DEFENDANTS CORECIVIC, VANTELL, AND SMITH

64. The Plaintiff incorporates and realleges each and every allegations of the Complaint as if fully set forth herein.

65. Defendants CoreCivic, Vantell, and Smith owed Mr. Huey a legal duty of care to protect him from reasonably foreseeable harm.

66. Tyler Smith informed Defendants of the specific intent to do violence to Mr. Huey if he was forced into the cell.

67. Defendant CoreCivic is liable for the actions of its agents, servants, and employees in accordance with the doctrine of respondeat superior.

68. Defendants knew that ignoring a threat of violence at Trousdale Turner Correctional Center posed a significant risk of physical harm to Mr. Huey because similar acts of violence are routinely perpetuated there.

69. Defendants had actual and constructive notice of the risk of foreseeable harm that Tyler Smith posed specifically to Mr. Huey, and thus, they had reason to anticipate the vicious attack.

70. Defendants knew or should have known that Mr. Huey would become the victim of an attack, but failed to use reasonable care to prevent it.

71. Defendants breached their duty of care to Mr. Huey, which proximately caused Mr. Huey to suffer a violent assault at the hands of Tyler Smith, just as he promised.

72. Defendants, while having an affirmative duty to take reasonable steps to protect Plaintiff from assault, and having actual and/or constructive knowledge of the dangerous threat that a third party inmate posed to Plaintiff, was negligent and in disregard of its duty and has breached its duty to the Plaintiff by negligently and carelessly:

    (a) In failing to take reasonable, adequate, and necessary precautions to protect the Plaintiff, from the criminal acts of a third party, under circumstances where the risk was reasonably foreseeable;

    (b) In failing to enact, adopt, implement, and enforce reasonable and proper policies, procedures, rules, standards, and guidelines for the protection of inmates from attacks by other inmates; and,

    (c) In failing to properly and adequately train, supervise, and instruct its employees in appropriate policies and procedures concerning reasonable, adequate, and necessary actions to take for the protection of inmates from attacks by other inmates.

73. As a direct and proximate result of the negligence of Defendants, Plaintiff has suffered serious and permanent personal injuries, been forced to seek medical attention for which he has incurred

medical, hospital and doctor bills, suffered great pain and suffering, loss of enjoyment of life, and anxiety, all of which he is entitled to recover from Defendants for the negligence as alleged herein.

74. Further, as a direct and proximate result of the negligence of Defendants as alleged herein, Plaintiff will incur in the future medical, hospital and doctor bills, great pain and suffering, loss of enjoyment of life, and anxiety all of which he is entitled to recover from these Defendants.

WHEREFORE, the Plaintiff prays for the following relief:

1. That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That the Plaintiff be awarded all compensatory, consequential, and incidental damages to which the Plaintiff is entitled in an amount not less than $1 million;

3. That the Plaintiff be awarded punitive damages in an amount not less than $3 million;

4. That the Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

5. That a jury of 12 be empaneled to try this cause;

6. That pre-judgment and post-judgment interest be awarded to the Plaintiff; and

7. That Plaintiff be awarded all further relief to which the Plaintiff is entitled.

Respectfully submitted, this 4th day of August, 2025.

GRITTON & GRITTON, PLLC

/s Robert P. Gritton
Robert P. Gritton
Gritton & Gritton, PLLC
752 South Church Street
Murfreesboro, TN 37130
(615) 867-0088